UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

**BRANDON CARROLL**                                                                                                     **PLAINTIFF**

**v.**                                                                            **CIVIL ACTION NO. 1:22-CV-P130-JHM**

**JAILOR JEFF PENNICK** *et al.*                                                                                  **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion for summary judgment filed by Defendant Todd County (DN 29). This matter is ripe for decision.[1] For the following reasons, Todd County's motion will be denied.

**I**.

Plaintiff Brandon Carroll initiated this *pro se* 42 U.S.C. § 1983 civil-rights action based on events that occurred during his incarceration at Todd County Detention Center (TCDC) as a convicted prisoner. Upon initial review of this action pursuant to 28 U.S.C. § 1915A (DN 14), the Court allowed Eighth Amendment claims for deliberate indifference to Plaintiff's health to proceed against Todd County based upon Plaintiff's allegations regarding COVID-19. In the amended complaint (DN 7), which was signed under penalty of perjury, Plaintiff stated as follows:

> On 2-18-22, I was transported to TCDC upon arrival I was put in a cell where other inmates were infected with COVID-19. TCDC did not offer any testing, vaccines, or quarantine. [T]hey put me straight into the cell with infected inmates. After about a week to 2 wks I was infected myself. Still not offered any testing or vaccine but told to [buy] Tylenol off commissary. For several weeks, I was unable to smell, taste and hardly eat and feverish.

(DN 7).

---

[1] In ruling on this motion, the Court considered Todd County's memorandum in support of the motion (DN 29-1), Plaintiff's response (DN 30), Todd County's reply (DN 33), Plaintiff's supplemental response (DN 36), and Todd County's supplemental reply (DN 37).

## II.

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) (citations omitted). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter" its burden of showing a genuine issue for

trial. *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Yet statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

### III.

In its motion for summary judgment, Todd County argues that 1) this action is barred by the doctrine of sovereign immunity; 2) Plaintiff has failed to show physical injury; 3) Plaintiff failed to exhaust his administrative remedies; and 4) Todd County is entitled to summary judgment on the merits of Plaintiff's Eighth Amendment claims.

### A.

The Court first addresses Todd County's argument that Plaintiff's claims against it are barred by the doctrine of sovereign immunity. "The Eleventh Amendment and background principles of sovereignty ordinarily bar lawsuits against States and state officials." *See Alden v. Maine*, 527 U.S. 706, 712-14 (1999). Thus, "the doctrine of sovereign immunity protects States, not state subdivision such as counties." *McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 994 (6th Cir. 2019). For this reason, Todd County's argument that this action is barred by sovereign immunity fails.[2]

### B.

Todd County next argues that Plaintiff's claims against it are barred by the "physical injury" requirement set forth in Prison Litigation Reform Act (PLRA). This section of the PLRA provides that "No Federal civil action may be brought by a prisoner confined in a jail, prison, or

---

[2] In this section, Todd County also argues that Plaintiff has failed to allege that Todd County had a custom or policy which caused a constitutional deprivation as required by *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). However, Todd County does not apply this standard in its arguments regarding either of Plaintiff's Eighth Amendment claims.

other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." 42 U.S.C. § 1997e(e). The Sixth Circuit has indicated "that even though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more than *de minimis* for an Eighth Amendment Claim to go forward." *Jarriett v. Wilson*, 414 F.3d 634, 640 (6th Cir. 2005). Here, Plaintiff avers that when Todd County placed him into a cell with inmates infected with COVID-19, he became "severely ill, with symptoms of headaches, body aches, fever, vomiting, diarrhea, shortness of breath, loss of smell and loss of taste lack of appetite, etc." (DN 36-1, p. 1, ¶ 5). The Court finds that these conditions constitute more than a *de minimis* injury under 1997e(e) in the Sixth Circuit and that this action is not barred by 1997e(e). *See, e.g., Peyton v. Kibbler*, No. 2:21-cv-0719 DJC KJN, 2023 U.S. Dist. LEXIS 229457, at *33 (E.D. Cal. Dec. 27, 2023) (holding COVID-19 infection with symptoms including difficulty breathing, weakness, pain, fever, and dizziness constitute a physical injury which is more than *de minimis*); *Jones v. Pollard*, No. 21-cv-162-MMA (RBM), 2022 U.S. Dist. LEXIS 42200, at *29-30 (S.D. Cal. Mar. 9, 2022) (concluding claim prisoner contracted COVID-19 and suffered from chest pains and racing heartbeats requiring medication sufficiently alleged more than a *de minimis* physical injury).

## C.

The Court next turns to Todd County's argument that is entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies under the PLRA. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court, interpreting § 1997e(a), has expressly stated: "There is no question that exhaustion

4

is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). The PLRA's exhaustion requirement "hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Doe 8-10 v. Snyder*, 945 F.3d 951, 962 (6th Cir. 2019) (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)). Moreover, "because an inmate's failure to exhaust his administrative remedies is an affirmative defense (not a jurisdictional requirement) that the defendants have the burden to plead and prove by a preponderance of the evidence, '[a] district court should grant summary judgment only if a defendant establishes that there is no genuine dispute of material fact that the plaintiff failed to exhaust.'" *Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2022) (quoting *Does 8-10*, 945 F.3d at 961).

In support of its motion for summary judgment, Todd County attaches the affidavit of TCJ Jailer Penick which provides that "[a]t all times during Plaintiff's incarceration, TCJ had in effect an inmate grievance procedure available to him and other prisoners. More specifically, all grievances were to be submitted on the Kiosk in the inmate's cell"; "Plaintiff was made aware of TCJ's grievance policy and procedure"; and "[a] review of the records of the TCJ does not reveal Plaintiff submitted a grievance regarding his claim that Defendant was deliberately indifferent to his medical care . . . ." (DN 29-2, ¶ 3-5).

In his response (DN 30), which Plaintiff styled as a motion to dismiss Todd County's summary-judgment motion, Plaintiff attaches his own affidavit in which he avers that no grievance forms were available and that "the capabilit[y] . . . of grievance policy was not on the kiosk." (DN 30-1, ¶ 8). He continues, "Plaintiff affirms that capability of . . . grievances was not available on the kiosk until or about July/August [2022], when the [TCJ] changed their software system to

5

(InmateCanteenSales.com) well after the plaintiff had filed his claim." (*Id*. at ¶ 9). Plaintiff also attaches an affidavit to his supplemental response (DN 36) in which further avers as follows: that he "requested grievance forms and was informed by staff that 'NO' grievance forms are available, but could speak with a Captain if needed"; "the following day Plaintiff spoke with Lt. Pierce and requested to speak to Captain Lewis or Captain Fowler"; "Plaintiff did speak with Captain Fowler regarding his issue and grievance and was informed by Captain Fowler that she would speak with Captain Dunn who is over the grievance process and have him to come speak with [P]laintiff"; and "Plaintiff avers that he never spoke with Captain Dunn and Dunn never came regarding grievance and the issue at hand despite the [P]laintiff's attempts." (DN 36-1, ¶¶ 11-14). In this affidavit, Plaintiff again avers that the "process for filing a grievance on the kiosk was not available until July of 2022, when [TCJ] switched system, software/contract to 'InmateCanteenSales.Com' . . . ." (*Id*. at ¶ 15).

In its reply (DN 33), Todd County argues that it is entitled to summary judgment because Plaintiff has offered no evidence that the grievance process was not available to him. This statement, however, is belied by the record set forth above. And although Todd County argues that Plaintiff's statements in his affidavits should be ignored as self-serving, Todd County does not explain why Jailer Penick's statements in his affidavits should not be ignored for the same reason. Here, neither party has presented any evidence outside of Plaintiff's or Jailer Penick's affidavits. *See Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 (6th Cir. 2010) ("A court may not disregard evidence merely because it serves the interests of the party introducing it."); Moreover, the Sixth Circuit has specifically held that "prisoner's sworn affidavit, standing alone, may create a genuine dispute of material fact that forecloses summary judgment on exhaustion

even if the record lacks corroborating evidence," and even if it is self-serving. *Lamb v. Kendrick*, 52 F.4th 286, 296 (6th Cir. 2022).

Based upon the above, the Court concludes that Plaintiff has produced specific facts demonstrating a genuine issue of fact for trial regarding whether TCJ had a grievance process that was available to him. Thus, Todd County is not entitled to summary judgment on the exhaustion issue. *See also Young v. Mulvaine*, No. 22-3733, 2023 U.S. App. LEXIS 15945 (6th Cir. June 23, 2023) (affirming denial of summary judgment where the parties' competing affidavits created a factual dispute related to exhaustion – including whether the grievance procedure was rendered unavailable to the plaintiff because he was unable file grievances on a kiosk and then asked for paper copies of grievance forms but was told they had been eliminated).

**D.**

Finally, the Court turns to Todd County's arguments regarding the merits of Plaintiff's Eighth Amendment claims – that he was placed in a cell with COVID-19 infected inmates even though he did not have COVID-19 and that he did not receive any medical care after he subsequently contracted what he believed to be COVID-19.

**1. Placement in Cell with COVID-19 Positive Inmates**

A deliberate indifference claim under the Eighth Amendment includes both an objective and a subjective prong: (1) the prisoner "is incarcerated under conditions posing a substantial risk of serious harm" (the objective prong), and (2) "the official knows of and disregards an excessive risk to inmate health or safety" (the subjective prong). *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994).

As to the objective prong, Todd County does not dispute that Plaintiff was "incarcerated under conditions posing a substantial risk of serious harm" when he was incarcerated at TCJ during

the COVID-19 pandemic. *See* DN 33, p. 3. Todd County argues, however, that the evidence shows it was not deliberately indifferent to this risk.

The primary Eighth Amendment case related to prison conditions during the COVID-19 pandemic in this circuit is *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020). In *Wilson*, the Sixth Circuit vacated a preliminary injunction granted by the lower court, finding that the *Wilson* plaintiffs were unlikely to succeed on the merits of their Eighth Amendment claim because the Bureau of Prisons (BOP) had likely responded reasonably to the risk of COVID-19 by "implement[ing] a six-phase action plan to reduce the risk of COVID-19 spread at [the facility]" and by "t[aking] preventative measures, including screening for symptoms, educating staff and [incarcerated people] about COVID-19, cancelling visitation, quarantining new [incarcerated people], implementing regular cleaning, providing disinfectant supplies, and providing masks." *Id*. at 841. While "[t]he BOP initially struggled to scale up its testing capacity," its "efforts to expand testing demonstrate[d] the opposite of a disregard to a serious health risk." *Id*. The court held that even if the response was inadequate, the BOP "ha[d] not disregarded a known risk or failed to take any steps to address the risk . . . such that its response [fell] below the constitutional minimum set by the Eighth Amendment." *Id*. at 843.

In TCJ Jailer Penick's first affidavit, he avers that "TCJ followed guidance from the state and local government agencies and implemented protocols to limit exposure to, and the spread of COVID-19 in the facility"; that "these protocols included postponing programs, visitations, public access, taking temperature of inmates, increased cleaning and sanitation efforts by staff and inmates, and cells were furnished with cleaning supplies and antibacterial soap"; that "TCJ screened staff and inmates and checked new inmates for elevated temperatures [and] [i]f an inmate had an elevated temperature, the inmate was quarantined until cleared by medical personnel"; and

8

that "TCJ implemented a mandatory facemask for all individuals in the facility." (DN 33-1, ¶¶ 3-6). The Court agrees that if the undisputed evidence showed that these procedures were in effect and being following during the time period at issue, *Wilson* would suggest that Todd County did not act with deliberate indifference to the risk presented to its inmates by the COVID-19 pandemic.

Todd County, however, has presented no evidence that these procedures were in effect in February 2022, when Plaintiff entered TCJ. Moreover, Todd County does not dispute that it did not follow at least one of these procedures with Plaintiff – the procedure that required TCJ to "screen staff and inmates and check new inmates for elevated temperatures [and] [i]f an inmate had an elevated temperature . . . []quarantined [that inmate] until cleared by medical personnel." Rather in response to the affidavit submitted by Plaintiff (DN 36-1), as well his amended complaint (DN 7), which imply that Todd County was not following this screening procedure, Todd County itself indicates that it was not able to follow at least some of the procedures TCJ Jailer Penick avers TCJ implemented. For example, in its supplemental reply, Todd County argues that "Plaintiff has failed to develop any proof that TCJ had any other available space within the facility that could house only positive inmates. Given the logistical constraints, TCJ had to utilize a quarantine method different from that recommended by the CDC guidelines." (DN 37, p. 3). Todd County also argues that although Plaintiff complains that he was placed in a cell with positive inmates, he has "not advanced any proof that it was realistically possible for TCJ to segregate positive inmates in an isolated cell." (DN 33, p. 4). If TCJ was not following the procedures TCJ Penick avers that it was, then *Wilson* does not dispose of this case. And, indeed, TCJ points to another case which it believes demonstrates that it has met its burden of showing it was not deliberately indifferent to the risk presented by COVID-19, even if TCJ was not following its own procedures, *Blackburn v. Noble*, 479 F. Supp. 3d 531 (E.D. Ky. Aug. 14, 2020). In *Blackburn*, the court held as follows:

9

> The Court finds that the measures taken by Respondents represent a reasonable response to the serious risks posed by COVID-19. After examining Respondents' efforts to overcome the impossibility of social distancing, the Court finds that they "do [] their best balancing social distancing and regulation applicable to the facility" so they do not exhibit deliberate indifference, especially when the CDC's own guidance "presupposes that some modification of its social-distancing recommendations will be necessary in institutional settings." *Swain v. Junior*, 958 F.3d 1081, 1089 (11th Cir. June 15, 2020).

*Id*. at 541.

The Court finds that *Blackburn* is easily distinguishable from this case. In *Blackburn*, the prison officials presented evidence that they "recognized the risks associated with dormitory-style housing and made reasonable efforts to ameliorate that risk by suspending transfers between facilities, isolating all new detainees from the general population for 14 days, *placing detainees with COVID-19 symptoms in isolation*, and limiting the number of people in different common areas." *Id*. (emphasis added). Here, although Todd County seems to argue that TCJ did not follow its own procedures if it was "realistically impossible," like the prison officials in *Blackburn*, unlike the prison officials in *Blackburn*, it has presented no evidence regarding which procedures had to be modified, the modifications that had to be made, or the reasons the modifications were necessary.

In light of this jurisprudence and the evidence presented, the Court concludes that Todd County has failed to meet its burden. A reasonable jury could conclude that Todd County was deliberately indifferent to Plaintiff's health when it placed him in a cell with COVID-19 infected inmates since the validity of the evidence Todd County presented regarding its COVID-19 procedures has been called into question by Todd County itself and no additional explanatory evidence was provided.

### 2. Denial of Medical Care

Finally, the Court turns to Plaintiff's claim that Todd County was deliberately indifferent to his serious medical needs when it failed to provide any medical care to Plaintiff after he developed COVID-like symptoms.

An Eighth Amendment claim for medical deliberate indifference also "has both objective and subjective components." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). To satisfy the objective element of a medical deliberate indifference claim, a plaintiff must allege "a serious medical need, which is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Martin v. Warren Cnty.*, 799 F. App'x 329, 338 (6th Cir. 2020) (quoting *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010)). To satisfy the subjective component of the deliberate indifference test, a plaintiff must allege "that the defendant possessed a sufficiently culpable state of mind in denying medical care." *Winkler v. Madison Cnty.*, 893 F.3d 877, 891 (6th Cir. 2018) (quoting *Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009)) (internal quotation marks omitted).

Todd County first argues that Plaintiff has not presented evidence to satisfy the objective component of the above standard – that is, that he had a sufficiently serious medical need. As set forth above, Plaintiff avers that a few weeks after Todd County placed him into a cell with inmates who had COVID-19, in February 2022, he became "severely ill, with symptoms of headaches, body aches, fever, vomiting, diarrhea, shortness of breath, loss of smell and loss of taste lack of appetite, etc." (DN 36-1, ¶ 5). He also avers that his symptoms lasted "well over a month." (*Id*. at ¶ 19). The Sixth Circuit has held that "[o]bvious manifestations of pain and injury" include complaints of sharp and severe stomach pains for an extended period of time and vomiting,

*Blackmore v. Kalamazoo Cnty.*, 90 F.3d 890, 899 (6th Cir. 2004), and a fever accompanied by vomiting. *Shade v. Middletown, Ohio*, 200 F. App'x 566, 569 (6th Cir. 2006). In light of this jurisprudence, the Court concludes that a jury could reasonably find that Plaintiff suffered from an objectively serious medical need.

Todd County next argues that Plaintiff has failed to present evidence that it was deliberately indifferent to Plaintiff's COVID-like symptoms. It states that the evidence shows that Plaintiff never made a request for medical care through the kiosk system in his cell and that Plaintiff was told that he could purchase Tylenol from the commissary for the symptoms he was experiencing. In his first affidavit, Plaintiff avers that during the time he suffered from symptoms of COVID-19, "no medical forms . . . were available and that the capabilities of medical request was not on the kiosk." (DN 30-1, ¶ 8). In his second affidavit, Plaintiff avers that when he requested medical attention, he was informed that no "medical forms" are available and he should write his request for medical care on paper. (DN 36-1, ¶¶ 6). Plaintiff avers that he then gave a written request for medical care to "staff members." (*Id.* at ¶ 7). Plaintiff states that he asked nearly every day to see medical and was informed "Medical will get you with they can" and that he could purchase over-the-counter medication from the commissary while he waited. (*Id.* at ¶¶ 8-9). Plaintiff continues, "Medical staff never called for [P]laintiff, no testing or medical treatment was ever offered, and request for medical was given the run-around or forgotten." (*Id.* at ¶ 10). Plaintiff concludes, "[I] was not seen by medical personnel until June of 2022, when [I] received a standard yearly physical." (*Id.* at ¶ 16).

Thus, Plaintiff has presented evidence that he was never seen by any medical professional for his COVID-like symptoms. And although Todd County asserts that Plaintiff never made a request for medical care through its kiosk system, Plaintiff has presented evidence that this system

12

was not able to process medical requests in February/March 2022 and that he made a paper-request to be seen by a medical professional as he was instructed to do.

Upon consideration, the Court concludes that material facts are in dispute and that if a jury believes Plaintiff's evidence it could reasonably conclude that he had serious COVID-like symptoms but that he was not seen by a medical professional to determine whether he needed treatment, despite Plaintiff's averment that he made repeated requests (verbal and written) to be seen by a medical provider at TCJ. Based on Plaintiff's evidence, a jury could also reasonably find that Plaintiff's harm was caused by a Todd County custom or policy of failing to make the medical request process available through the kiosk or paper form during the time period at issue and because Plaintiff avers that he asked multiple personnel for medical treatment but was ignored.

As such, the Court finds that Todd County is not entitled to summary judgment on this claim.

### IV.

For the reasons set forth above, **IT IS ORDERED** that Todd County's motion for summary judgment (DN 29) is **DENIED**.

**IT IS FURTHER ORDERED** that Todd County's motion to strike Plaintiff's sur-reply (DN 39) is **DENIED as moot** because the Court did not consider it in ruling upon this motion.

Date: January 25, 2024

*Joseph H. McKinley Jr.*
Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
  Counsel of Record
4414.011

13